**Henrique FOY, Petitioner,**

**v.**

**UNITED STATES of America, Respondent.**

**No. CV–93–1674 (CPS).**

United States District Court, E.D. New York.

Nov. 3, 1993.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Petitioner, Henrique Foy, brings this motion *pro se* pursuant to the federal habeas corpus statute, 28 U.S.C. § 2255, in order to vacate, set aside, or correct his criminal convictions for possession and distribution of narcotics and firearms. Interpreting his motion papers liberally, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), petitioner alleges selective prosecution on religious and racial grounds, prosecutorial misconduct through the suppression of favorable evidence and violation of the Jencks Act, insufficiency of the evidence to sustain his conviction, violation of the right to confront witnesses, double jeopardy, lack of federal jurisdiction, prejudicial joinder, ineffective assistance of counsel at both the trial and appellate levels, and other violations of the First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendments to the Constitution. For the reasons set forth below, petitioner's motion is denied in its entirety.

### Factual Background

The following facts are established by the trial record. In the spring of 1989, Kevin Crandle, an acquaintance of petitioner, was arrested by undercover agents from the Bureau of Alcohol, Tobacco and Firearms ("the ATF") for illegally selling them guns. After informing the agents that crack cocaine was being sold out of a Brooklyn restaurant called the "Congo" by three individuals

(among them petitioner) to whom he had also been delivering firearms from out of state, Crandle agreed to cooperate with the ATF and work for the Bureau in an undercover capacity.

After a series of taped conversations regarding Foy and his accomplices' desire to purchase more guns, Crandle delivered three firearms to the "Congo" in June of 1989. Immediately following the delivery, ATF agents executed a search warrant at the restaurant, where they discovered and seized a quantity of crack cocaine and vials. The three suspects fled out a window. Two were apprehended outside, but Foy escaped after pointing a handgun at an ATF agent. He was arrested several days later.

Crandle testified against Foy and his co-defendants during a jury trial held in January of 1990. The jury convicted petitioner of two counts of narcotics trafficking in violation of 21 U.S.C. § 846 and § 841(b)(1)(B), three counts of firearms violations in violation of 18 U.S.C. § 924(c)(1), § 922(a)(1)(A) and § 922(a)(3), and one count of assaulting an ATF agent in violation of 18 U.S.C. § 111. One of his co-defendants was also convicted on narcotics and firearms charges, and the third was acquitted.

Petitioner appealed his conviction on the grounds that there was insufficient evidence to convict him. The Court of Appeals affirmed the conviction in an unpublished opinion dated August 1, 1991.

## DISCUSSION

Petitioner's arguments with respect to the sufficiency of the evidence as to the first two counts of his conviction have already been considered and rejected by the Court of Appeals and are not now subject to reconsideration on a section 2255 motion. *See United States v. Jones,* 918 F.2d 9, 10–11 (2d Cir.1990). Petitioner's remaining arguments, with the exception of his claim of ineffective assistance of appellate counsel,[1] are also procedurally barred from collateral relief since he failed to raise these claims either at trial or on direct appeal and has not shown prejudice nor cause why they should be heard now.[2] *See Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992). Even when reviewed substantively, however, all of petitioner's claims are meritless.

Petitioner argues that his constitutional rights were violated due to selective prosecution on the basis of his appearance, religion, and race. In order to demonstrate selective prosecution, a defendant must show both that the prosecution "had a discriminatory effect, and that it was motivated by a discriminatory purpose." *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *see also Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).[3]

Petitioner demonstrates no factual basis for the allegations in his complaint. Although he states repeatedly that he has been persecuted as a result of his race, appearance and Rastafarian religion, he provides no evidence that his arrest or conviction was based on any of these factors. The sole basis for his claims is the allegation that a white man would not have received the same treatment as he has, the fact that then President Bush pardoned a Pakistani drug dealer in January of this year, and the fact that the government successfully prosecuted Assistant to the Attorney General Henry Barr in February of 1991. None of these

1. Petitioner makes the claim that he was denied appellate counsel and that his appellate counsel was ineffective. He may be making the point that his counsel was so ineffective as to constitute actual denial of counsel, but this is precisely what the law terms "ineffective assistance." *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner's two claims will thus be treated as one for ineffective assistance of counsel.

2. The failure to raise these and other claims on appeal might be excused if attributable to ineffec-

tive assistance of appellate counsel. *See Barton v. United States,* 791 F.2d 265 (2d Cir.1986). Petitioner's ineffective assistance claim, however, is addressed and rejected *infra.*

3. In addition, a defendant waives his defense of selective prosecution unless he properly raises it before trial. *See United States v. Taylor,* 562 F.2d 1345 (2d Cir.), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977). Petitioner failed to raise a defense of selective prosecution at trial or on appeal.

allegations in any way suffices to meet petitioner's burden of establishing a prima facie case of selective prosecution.

Petitioner argues that his right to due process was violated when the government and his attorney conspired to suppress evidence in violation of his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which directs the prosecution to turn over to the defense requested evidence favorable to an accused where such evidence is material as to guilt, and under the Jencks Act, 18 U.S.C. § 3500, which requires the government to produce previously made statements in its possession of any witnesses testifying under examination at trial. Petitioner, however, fails to identify any specific document the government failed to produce to the defendants, with the exception of the plea agreement between the government and witness Kevin Crandle. Pet.Mem. ¶ 12M). The trial record, however, establishes that Crandle's plea agreement was in fact produced to defense counsel. Trial Tr. at 282. Accordingly, petitioner's contentions that the government failed to comply with its *Brady* and Jencks Act obligations are unsupported.

Petitioner argues that the government did not prove the conspiracy alleged in Count One, since one cannot conspire "with a government agent."

An appellant bears a heavy burden in attacking the sufficiency of the evidence for a conviction. The verdict of a jury must be sustained if there is substantial evidence to support it, taking the view most favorable to the government. *See United States v. Young*, 745 F.2d 733 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). In addition, the Court must construe all inferences in the government's favor. *United States v. Dazzo*, 672 F.2d 284 (2d Cir.), *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982).

Foy's arguments that a conspiracy was not proved are unsupported. Although one of his co-defendants was acquitted of the charge, another was convicted as well, providing the necessary number of actors for a conspiracy claim. In addition, the evidence presented at trial was more than sufficient to establish petitioner's culpability.[4] Although he manages to list a large number of cases and holdings, petitioner fails to provide any argument for why the evidence in his particular case was insufficient to convict.

Petitioner claims that his conviction in federal court should have been barred by the double jeopardy clause, since the various firearms charges under which he was convicted "were one and the same charge." Pet. Mem. at 2.

The test for whether a defendant has been charged twice for commission of the same crime was set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In that case, the Supreme Court stated that "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182.

In the instant case, a review of the firearms offenses establishes that each require proof of an element that the others do not. Under Count Five, Foy was charged with the violation of 18 U.S.C. § 922(a)(1)(A), which makes it illegal to engage in the business of dealing in firearms. Count Seven, on the other hand, charged Foy with the violation of 18 U.S.C. § 922(a)(3), which makes it illegal for the defendant to receive, in the state in which he resides, firearms from outside the state. Count Three charged Foy with violation of 18 U.S.C. § 924(c)(1), which makes it illegal to use a gun during the commission of a drug trafficking violation, whereas Count Four requires proof of assaulting a federal officer. Accordingly, petitioner has failed to establish a double jeopardy bar to these offenses.

---

4. Petitioner claims that the Court stated at trial that there was insufficient evidence to convict him. Petitioner fails to identify any utterance by the Court that could be construed in such a fashion.

Petitioner argues that his Sixth Amendment right to confront witnesses was violated because "Prosecutors and Foy's Counsel denied Foy the guaranteed right to favorable witnesses for his defense ..., namely the 'Female' in the alleged opening of the guns, and the alleged Glock sold to an alleged co-defendant named 'COW' were favorable witnesses for Foy's defense." Pet.Mem. ¶ 120. Petitioner also argues that his rights were violated when his co-defendants did not testify at trial.

■ Petitioner fails, however, to provide any evidence that the government prevented him from calling either the unidentified female present in the back of the Congo on the day of the controlled delivery or the individual named "Cow." In addition, petitioner fails to describe the testimony of either of these potential defense witnesses or otherwise establish that their testimony would have been helpful to his defense. There is also no evidence that Foy attempted to call either of his two co-defendants at trial or even attempted to establish that their testimony would have been favorable to him.[5] Accordingly, petitioner fails to establish that his Sixth Amendment confrontation rights were violated.

■ Petitioner also contends that the Tenth Amendment was violated in that "[t]he government did not have 'jurisdiction' over the case at bar ... [because] Foy never left the State of New York." Pet.Mem. at 24. Testimony presented at trial, however, indicated sufficient evidence to establish federal jurisdiction over the firearms dealings charges. In particular, government witness Crandle testified that on a number of occasions he advised Foy that he was going south to purchase firearms and that Foy gave him money with instructions to buy firearms for him. Crandle purchased the guns in Georgia using money received from Foy and delivered certain of those guns to Foy in New York State. This testimony was sufficient to establish jurisdiction.

■ Petitioner argues that his case was prejudicially joined with that of his co-defendants in violation of Federal Rule of Criminal Procedure 8(b),[6] which states in part: "Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Courts have read this provision to mean that the acts must be "unified by some substantial identity of facts or participants" or "arise out of a common plan or scheme." *United States v. Attanasio,* 870 F.2d 809 (2d Cir.1989) (quoting *United States v. Porter,* 821 F.2d 968, 972 (4th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988)).

Although petitioner again cites a number of cases, he provides no argument why there was prejudicial joinder of defendants in the instant case. Moreover, the facts as stated above leave no doubt that the charges against the various defendants originated from the same transactions.

■ Petitioner argues that he was denied effective counsel at trial in violation of the Sixth Amendment. In order to establish that he received ineffective assistance of counsel, petitioner must demonstrate that his counsel committed errors so serious that he was not functioning as counsel within the meaning of the Sixth Amendment and that counsel's performance was so deficient that he was deprived of a fair trial. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Petitioner has not made either showing. He has not identified any errors committed by trial counsel or established that trial counsel provided inadequate assistance.

---

5. Petitioner also provides no evidence that he was somehow prevented from calling his co-defendants at trial or established that their testimony would have been helpful to him. Indeed, in a statement that was redacted at trial to avoid prejudice to petitioner, petitioner's co-defendant Nicholson identified Foy as the owner of the drugs seized at the Congo.

6. Petitioner actually argues that the joinder was in violation of Fed.R.Crim.P. 8(a), which deals with joinder of offenses, not defendants. This appears to be a mistake, however, as the cases petitioner cites deal solely with prejudicial joinder of defendants.

Having failed to provide evidence of any mistake, he has consequently failed to establish that, but for that mistake, the result in his trial would have been different. Petitioner again lists a number of cases but fails to provide any facts on which to apply his legal analysis to his case.

Petitioner's claim of ineffective counsel on appeal is the only claim that he is not procedurally barred from bringing by virtue of his earlier appeal. Accordingly, the facts surrounding this claim will be discussed in more detail.

Petitioner argues that he was denied effective assistance of counsel on appeal in that his retained appellate counsel, Michael Maloney, was under investigation by the U.S. Attorney's Office for the Southern District of New York at the same time that he was representing petitioner. Petitioner claims his counsel had a conflict of interest in that he "used Foy as leverage to make a deal for himself ... for a lighter sentence." Pet. Mem. ¶ 12F.

Petitioner appears to be correct in saying that his appellate counsel was under investigation.[7] An investigation into Michael Maloney's finances began in September 1990, when the FBI received a referral from the Williamsburg Savings Bank concerning an allegedly fraudulent mortgage loan in the amount of $335,000 made to Maloney's wife. By December 1990, the investigation indicated that Maloney had probably made certain false statements to the bank in connection with the loan.

Maloney was interviewed by the FBI on two occasions in connection with his involvement with the loan. At one of those meetings, Maloney acknowledged his participation in the fraudulent loan scheme and agreed to cooperate with the government, signing a cooperation agreement with the Southern District in May of 1991. Pursuant to that agreement and subsequent to the agreement and decision of petitioner's appeal, Maloney was charged with one count of conspiracy to make false statements in bank records in October of 1991. Before Maloney entered a

guilty plea to this charge, the prosecutors determined that Maloney had not been truthful and withdrew his cooperation agreement. On December of 1991, Maloney entered a plea agreement pursuant to which, two weeks later, he pled guilty to two counts charging him with conspiracy and bank fraud. The bank fraud count related to a loan application that Maloney made to Edison Federal Savings Bank in which he applied for a loan using a false name. In May of 1992, Maloney was sentenced to twelve months imprisonment and three years supervised release.

█ In the Second Circuit, if a defendant is able to prove an actual conflict of interest on the part of his attorney, this in itself is sufficient to prove a *per se* denial of his Sixth Amendment right to counsel, and no further evidence of prejudice is necessary. The Court of Appeals has upheld such *per se* violations in situations where counsel was not actually licensed to practice law, *see United States v. Novak,* 903 F.2d 883, 890 (2d Cir. 1990); *Solina v. United States,* 709 F.2d 160, 167 (2d Cir.1983), or actually implicated in the defendant's crimes, *see United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984). In *Bellamy v. Cogdell,* 974 F.2d 302 (2d Cir. 1992), the Court of Appeals advanced two rationales for applying the *per se* rule. The first applies in cases where the attorney is not duly licensed and stems from the Supreme Court's decision in *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938), holding that the failure to provide a criminal defendant with counsel creates a jurisdictional bar to a valid conviction. The second rationale is based on notions of conflict of interest and applies in cases both where the lawyer is not duly licensed and where the lawyer is implicated in the crimes of his client. In these circumstances the defense is necessarily compromised because the advocate ordinarily "cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of cre-

---

7. Petitioner's brief fails to provide any facts concerning the government's investigation into his appellate counsel's affairs other than the fact that such an investigation was proceeding. The following facts are taken from the government's brief and from the exhibits annexed thereto.

dentials," *Bellamy,* 974 F.2d at 307 (quoting *Solina,* 709 F.2d at 164), or own wrongdoing. The *Bellamy* court went on to state that, regardless of the facts presented, "application of the *per se* rule must be justified under one or both of these rationales." *Id.*

▮ Although petitioner is correct in stating that his retained appellate counsel was under criminal investigation by the U.S. Attorney's Office for the Southern District of New York and that he eventually entered into a cooperation agreement with that office while he handled Foy's appeal, he fails to provide any evidence to suggest that Maloney's representation of him created "an actual conflict of interest [that] adversely affected his lawyer's performance," *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980), and that would hence give rise to the *per se* rule.[8] Maloney's case was handled by a different U.S. Attorney's Office, and the crime for which he was prosecuted concerned false statements in mortgage applications, having nothing whatsoever to do with the narcotics, firearms dealing, and assault crimes for which Foy was on trial. Similar facts were stated in the case of *United States v. Aiello,* 900 F.2d 528 (2d Cir.1990), the Court of Appeals upheld the denial, without a hearing, of a claim that defense counsel had a conflict of interest where counsel knew himself to be the target of an unrelated tax investigation that ultimately led to a plea by the lawyer to tax violations. The court noted that, because the lawyer's "purported crimes were totally unrelated to the narcotics and tax crimes for which [the defendant] was being tried," a vigorous defense of the defendant "would not have risked revealing anything about the completely unrelated wrongdoing for which [the lawyer] was under investigation." *Id.* at 531.

Although petitioner is unable to plead a case of actual conflict of interest, his claim may still be analyzed under the traditional test of ineffective assistance of counsel set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and discussed *supra.* As stated above, *Strickland* requires that the defendant establish both that counsel's performance caused the representation afforded to fall below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. Petitioner provides no facts whatsoever to show that his appellate counsel's performance was deficient.

Accordingly, petitioner's motion for habeas corpus on the grounds of ineffective assistance of appellate counsel is denied.

Petitioner's remaining claims, such as the alleged "gross violations" of his First, Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Fourteenth Amendment Rights are either frivolous or set out in such broad conclusory fashion that it is unnecessary to spend further time in their discussion.[9]

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

---

8. Petitioner's allegations of fabrication of evidence as a result of a possible conflict of interest are meritless. In his brief, Foy alleges that "the prosecutor had full knowledge of the criminal charges against my/Foy's counsel before, during and after the Federal Court Trial of Foy, and that Foy's Counsel is now in Federal Prison ... [and the] prosecutor and Michael M. Maloney/New York Lawyer did have direct conflict of interest in dealing with Foy and Maloney at the same time." Pet.Mem. at 2. In fact, however, it was counsel Paul Ascher, not Michael Maloney, who represented Foy at his trial.

9. These include, for instance, the claim that the Second Amendment bars petitioner's conviction on firearms charges or that petitioner's First Amendment rights were violated because he was not allowed "to peaceably assemble in his place of business."